UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> K-FLEX USA, LLC, DISTRIBUTION INTERNATIONAL SOUTHWEST, INC., and GENERAL INSULATION CO, and, <br><br> Defendants. | **COMPLAINT** <br><br> Jury Trial: ☐ Yes ☒ No <br><br> DOCKET NO.: 7:19-cv-2745 <br><br> DISTRICT JUDGE: _____ |

**I. PRELIMINARY STATEMENT**

1. Plaintiff Watchtower Bible and Tract Society of New York, Inc., by attorney John O. Miller III, brings this diversity action seeking an order compelling arbitration pursuant to 9 U.S.C. § 206 and the terms of a contract, and alleges as follows:

2. During April through July, 2015, Plaintiff Watchtower Bible and Tract Society of New York, Inc. ("Watchtower") purchased from Distribution International Southwest, Inc., d/b/a "Distribution International, Inc.," ("DI") and from General Insulation Company ("GI") a total of 12,604 pipe hangers manufactured by K-Flex USA, L.L.C., ("K-Flex"), in consideration of $272,459.12. DI and GI shipped the pipe hangers to Watchtower in New York to be installed at Watchtower's new construction in Warwick, New York. In July of 2015, Plaintiff discovered defects in the pipe hangers that rendered them unfit for their intended purpose, necessitating their removal and replacement, and repairs to the pipe insulation, duct work, electrical conduit, sheetrock and other systems.

3. The $272,459.12 consisted of payments totaling $81,487.91 paid to DI and $190,971.21 paid to GI.

4. By having to remove and replace the defective K-Flex materials, Watchtower incurred a total of $321,651.66 in labor costs. Based on the man-hours required to remove and replace each defendant's defective materials, Watchtower allotted $143,955.28 of those labor costs to DI and $177,696.38 to GI.

5. DI refunded the $81,487.91 that Plaintiff had paid for the pipe hangers that DI had delivered, but paid none of the $143,955.28 in labor costs associated with removal of DI's pipe hangers. GI picked up its defective materials in June 2016, but refunded none of the cost of $190,971.21 that Watchtower paid for defective pipe hangers that GI delivered or the $177,696.38 for labor to remove the defective hangers that GI had supplied. K-Flex has paid Watchtower nothing and insists that Watchtower seek its remedies exclusively from DI and GI. Plaintiff's attempts to reach an amicable resolution of the dispute with Defendants have failed. Plaintiff seeks to recoup its $505,000.00 in unreimbursed material and labor costs.

## II. PARTIES IN THIS COMPLAINT

6. Watchtower is a New York not-for-profit corporation with its principal place of business at 900 Red Mills Road, Wallkill, Orange County, New York 12589-5200, Tel: (845) 744-6000, and additional offices at 30 Kings Drive, Tuxedo Park, Orange County, NY, 10987-5501, 1424 Long Meadow Road, Tuxedo Park, Orange County, NY 10987-3804, 2301 Boscobel Loop, Wappinger's Falls, Dutchess County, NY 12590-7140 and 100 Watchtower Drive, Patterson, Putnam County, New York 12563-9204.

7. K-Flex is a North Carolina limited liability company with its principal place of business at 100 Nomaco Drive, Youngsville, Franklin County, North Carolina 27596-9133. Tel: (919)

556-3475. Its agent for service of process is Giuseppe Guarino, President, who can be served at that address.

8. DI, on information and belief, represents itself as a Texas corporation with its principal place of business at 9000 Railwood Drive, Houston, Harris County, Texas. However, DI has registered with the Texas Secretary of State as a Foreign For-Profit Business. DI has local offices in numerous locations in the United States and Canada. Its registered agent for service of process in Texas is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas Texas 75201-3136.

9. DI is also registered in New Jersey as a Domestic Profit Corporation with a principal place of business at 343 Murray Hill Parkway, East Rutherford NJ 07073. Its registered agent for service of process in New Jersey is The Corporation Trust Company, 820 Bear Tavern Road, West Trenton NJ 08628. DI also does business as "Distribution International" and "Distribution International, Inc."

10. GI is a Massachusetts corporation with its principal place of business at 278 Mystic Avenue, Suite 209, Medford, Middlesex County, Massachusetts 02155-6330. Tel: (781) 391-2070. Its agent for service of process is CT Corporation System, 155 Federal Street, Suite 700, Boston MA 02110.

### III. BASIS OF JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332; the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse in citizenship. Watchtower is a citizen of New York. K-Flex is a citizen of North Carolina, DI is, on information and belief, a citizen of Texas, and GI is a citizen of Massachusetts.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Warwick, Orange County, New York, and the defective construction materials that are the subject of the action were delivered to Plaintiff in Montgomery, Orange County, New York, both located in the jurisdiction of the Southern District of New York. The defendants have purposefully availed themselves of the privilege of conducting business activities within the State of New York, including delivering their products to Plaintiff in the State of New York at Plaintiff's Montgomery, Orange County, New York warehouse.

## IV. STATEMENT OF FACTS

13.     K-Flex manufactured, and DI and GI marketed and delivered "360 K-Flex USA Hangers," ("pipe supports") intended for use to support insulated, rigid pipe.

14.     Plaintiff needed pipe supports for the construction of its new facilities in Warwick, New York, and selected K-Flex pipe supports based upon K-Flex's data sheets touting their positive qualities and durability. DI and GI were two suppliers of K-Flex pipe supports that could meet the quantity and time requirements of Plaintiff.

15.     Beginning on April 6, 2015, and continuing through July 9, 2015, DI shipped K-Flex pipe supports to Plaintiff at Plaintiff's Montgomery, New York warehouse. All such shipments were made pursuant to Plaintiff's Terms and Conditions contained in its Purchase Orders, key terms of which are set forth below. The total consideration Plaintiff paid to DI for K-Flex pipe supports was $81,487.91.

16.     GI began delivery of K-Flex pipe supports on May 18, 2015, and continued making deliveries through June 11, 2015. All such deliveries were made pursuant to purchase orders

from Plaintiff on terms and conditions, key terms of which are set forth below. The total consideration Plaintiff paid to GI for K-Flex pipe supports was $190,971.21.

17. In July of 2015, Watchtower discovered that the pipe supports were being crushed by and failing under the load of empty pipe. Watchtower notified K-Flex, which sent its representative, Ben Vacula and Steve Fisher, to examine the pipe supports in August, 2015. Mr. Vacula and Mr. Fisher took samples and photographs of the failing pipe supports.

18. K-Flex agreed that the K-Flex pipe supports were failing. K-Flex explained that the failed pipe supports had been made with defective materials; the raw material used to make them did not meet the compressive strength listed in their suppliers' data sheets; the material was significantly softer than advertised. Further, K-Flex's then-current stock of raw material for the rigid portion of the pipe hangers did not meet its specs. K-Flex explained that it was working diligently to find a solution.

19. Watchtower determined the need to remove the K-Flex pipe supports and replace them with pipe-supports manufactured and supplied by others.

20. On August 24, 2015, Watchtower sent letters to GI and DI notifying them of Watchtower's decision to remove the K-Flex brand from its construction complex.

21. Watchtower expended 4,776 man-hours to remove K-Flex pipe supports, replace the K-Flex pipe supports with other supports, and repair materials damaged by the removal and replacement process. Those man-hours are valued at $143,955.28 for the DI materials and $177,696.38 for the GI materials.

22. DI retrieved its K-Flex pipe supports and paid Watchtower $81,487.91 to reimburse it for the K-Flex pipe supports it had supplied, but refused to pay anything for Watchtower's labor to remove and replace them, and repair the other damage.

23. GI picked up the K-Flex pipe supports it had supplied, but refused to pay Watchtower anything.

24. K-Flex insisted that Watchtower seek reimbursement from DI and GI, and refused to pay Watchtower any amount.

25. On April 4, 2017, Watchtower sent letters to DI, GI and K-Flex demanding arbitration of the outstanding issues. Watchtower demanded $143,955.28 from DI for its share of labor costs in removing and replacing the defective K-Flex materials supplied by DI that took 2,114 man-hours to remove and replace, and to repair materials that were damaged in the process of removal and replacement. Watchtower demanded $183,167.10 (of the total of $190,971.21 that Watchtower paid GI) for defective parts delivered by GI, plus $177,696.38 in its share of labor costs for a total of $360,863.48 from GI. Watchtower demanded that in the alternative, K-Flex pay the outstanding $504,818.76 in total. None of the three defendants has honored Watchtower's demand to arbitrate. None has paid Watchtower anything other than the $81,487.91 paid by DI.

26. The parties' Agreement contains an arbitration provision stating: "Any controversy or claim arising out of or relating to this Agreement or its breach shall be resolved by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment on the award rendered may be entered in any court having jurisdiction located in Ulster County, New York. If an arbitrator satisfactory to both parties cannot be located in Ulster County, then the parties shall arbitrate in Westchester County. Demand for arbitration may be made in writing seven (7) days after a dispute arises or at any time thereafter."

27. The parties' Agreement contains an applicable-law provision stating: "This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, including the New York Uniform Commercial Code."

28. The Agreement includes the following warranty language: "In addition to any other warranties, expressed or implied, Seller expressly warrants that the merchandise shall be merchantable, fit for its intended use, of the highest quality, and free of defects of material and workmanship, and said warranty shall extend to Buyer and to Buyer's representatives."

## V. CAUSES OF ACTION

29. Watchtower relied on the skill and judgment of the Defendants to select and furnish goods suitable to support the pipes that Watchtower was installing in its Warwick Construction. Watchtower provided the details about the type, makeup, weight, and purpose of those pipes, and based upon the advice provided by the Defendants, selected the K-Flex pipe hangers that the defendants sold to Watchtower.

30. No warranty provided by Defendants, expressed or implied by contract, statute, or otherwise, was modified or excluded.

31. The failure of the pipe hangers as asserted above constitutes a violation by each of the defendants of New York's Uniform Commercial Code Section 2-315, which provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

32. K-Flex is a merchant with respect to goods of the kind it sold to Watchtower. Thus, K-Flex impliedly warranted that its pipe hangers would be merchantable as that term is defined in New York's UCC § 2-314.

33. By the failure of the pipe hangers as asserted above, K-Flex breached its implied warranty of merchantability as to the pipe hangers it sold to Watchtower.

34. DI and GI entered into specific contracts with Watchtower for the sale and delivery of K-Flex pipe hangers. The agreed terms and conditions of those contracts, as alleged above, were not met by DI or GI. Both DI and GI are thus in breach of their contract(s) with Watchtower inasmuch as the products they sold failed. Watchtower paid DI and GI for the defective products, and Watchtower sustained damages caused by the failure of the pipe hangers and by DI and GI's breach of contract.

35. GI has been unjustly enriched at Plaintiff Watchtower's expense. Watchtower paid GI for defective pipe hangers as alleged above, GI retrieved all of the pipe hangers it had sold to Watchtower, but GI did not reimburse Watchtower for the pipe hangers it retrieved. Based upon equity and good conscience, GI owes Watchtower the amount that Watchtower paid GI for the pipe hangers that GI retrieved.

36. The purchase orders between Watchtower and DI and GI contained express warranties as alleged above, which express warranties have been breached by DI and GI. The materials that DI and GI sold to Watchtower met none of those expressed warranties, and thus DI and GI are in breach of their warranties, to Plaintiff's detriment and damage.

37. Among the representations made to Watchtower by Defendants about the quality and performance of the K-Flex pipe hangers was the following information contained in a K-Flex USA product information data sheet: "Compressive Strength 85 psi minimum." The K-Flex pipe supports did not meet that strength. By leading Watchtower to rely on the representations about the quality and performance of the K-Flex pipe hangers, K-Flex, DI and GI made false statements of material fact about the product on which Watchtower reasonably relied.

38. K-Flex sold its pipe supports to Watchtower through its local distributors, DI and GI. The expressed warranties contained in the contracts between Watchtower and DI and Watchtower

and GI are thus binding on K-Flex, and K-Flex is liable to Watchtower for their breach.

39. **V. RELIEF**

40. Watchtower respectfully requests that this Court enter an order compelling K-Flex, DI and GI to enter into arbitration pursuant to the terms of the parties' Agreement and 9 U.S.C. § 206, and award Watchtower its costs, attorneys' fees, interest, and such further relief as this Court deems just and proper.

41. In the alternative, if the Court finds that arbitration by one or more of the defendants is not proper, authorized or merited, then Watchtower prays that the Court adjudge and decree that that defendant has violated Watchtower's contracts, violated that defendant's warranty, been unjustly enriched, and owes Watchtower $505,000 in compensatory damages, plus interest, attorneys' fees and such other damages that the Court deems merited, together with costs and such other necessary and proper relief as this Court deems just and reasonable.

Date: March 27, 2019
   Patterson, NY

              WATCHTOWER BIBLE AND TRACT SOCIETY
              OF NEW YORK, INC.

      By: s/ *John O. Miller, III*
         John O. Miller III (JM6909)
         Associate General Counsel
         Watchtower Bible and Tract Society of New York, Inc.
         *Attorney for Plaintiff*
         100 Watchtower Drive
         Patterson, NY 12563
         Telephone: (845) 306-0700
         Facsimile: (845) 306-0709
         Email: jmiller@jw.org